WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Lee Anthony, | No. CV-21-02183-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Michelle Lee Anthony's ("Plaintiff") Application for Disability Insurance Benefits under the Social Security Act by the Commissioner of the Social Security Administration ("Commissioner"). Plaintiff filed a Complaint with this Court on December 21, 2021, seeking judicial review of the denial of benefits. (Doc. 1 at 1.) Defendant Commissioner filed an Answer on June 1, 2022. (Doc. 15.) The Court has reviewed the briefs and Administrative Record (Doc. 16) and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.     Background**

Plaintiff filed an application for Social Security Disability Insurance Benefits on March 19, 2019, based on disability beginning November 19, 2018. (R. at 13.) Plaintiff later amended her alleged disability onset date to September 5, 2019. (Doc. 1 at 2.) Plaintiff's claim was denied initially on July 16, 2019, and upon reconsideration on September 24, 2019. (R. at 13.) Subsequently, Plaintiff filed a written request for a hearing. (*Id.*) A telephonic hearing was held on March 9, 2021, and the ALJ denied Plaintiff's

application on April 7, 2021. (*Id.*) The Appeals Council upheld the ALJ's decision on October 25, 2021. (R. at 1–3.) Following the unfavorable decision of the Appeals Council, Plaintiff timely sought judicial review with this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1 at 1.)

The Court has reviewed the medical evidence and administrative record and will discuss pertinent evidence in addressing the issues raised by the parties. The ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not under a disability within the meaning of the Social Security Act from the alleged disability onset date through the date of the ALJ's most recent decision. (R. at 23.) In making this determination, the ALJ assessed Plaintiff's disability after finding Plaintiff had the following severe impairments: fibromyalgia, chronic fatigue, inflammatory arthritis in the left wrist, and peripheral edema of hands and feet. (R. at 16.) The ALJ first determined that Plaintiff has not engaged in substantial gainful activity from September 5, 2019, to April 7, 2021. (R. at 15–16.) While noting that Plaintiff has multiple severe impairments, the ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16–17.)

In assessing Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff's symptom testimony was inconsistent with the objective medical evidence and other evidence in the record. (R. at 18.) With respect to the medical opinions, the ALJ found the opinions of the Disability Determination Services ("DDS") medical consultants and Dr. Diana Bejerano partially persuasive. (R. at 19–20.) The ALJ also determined the medical opinions of Dr. Brian Briggs and Plaintiff's treating physician, Dr. Joy Schechtman, were unpersuasive. (*Id.*) The ALJ ultimately concluded that the Plaintiff "has the residual functional capacity to perform light work" with certain limitations. (R. at 22.) Considering the Plaintiff's age, education, work experience, and RFC, the ALJ reasoned that Plaintiff is not disabled and is capable of performing past relevant work or another job "that exist[s] in significant numbers in the national economy." (*Id.*)

## II. Legal Standard

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the ALJ's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ follows a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof as to the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other

work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. Discussion

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Joy Schechtman; and (2) the ALJ erred in rejecting Plaintiff's symptom testimony. (Doc. 19 at 1–2.)

#### A. Treating Physician Opinion

Plaintiff first argues that remand is necessary because the ALJ committed materially harmful error in rejecting the opinion of her treating physician, Dr. Schechtman. (Doc. 19 at 11.) Specifically, Plaintiff asserts the ALJ did not provide a sufficient explanation supported by substantial evidence which rationally interpreted the record. (*Id.*) Plaintiff also asserts the ALJ failed to consider the required "consistency" and "supportability" factors. (*Id.*) In response, the Commissioner maintains that substantial evidence supports the ALJ's finding that Dr. Schechtman's opinion is unpersuasive. (Doc. 21 at 11.)

In 2017, the Commissioner revised the regulations for evaluating medical evidence for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Here, Plaintiff's claim was filed on March 19, 2019; therefore, the revised rules apply. (R. at 20.) Unlike the old regulations, the revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Lester v. Charter*, 81 F.3d 821, 830–31 (9th Cir. 1995) (requiring an ALJ provide "specific and legitimate reasons that are supported by substantial evidence in the record" when rejecting a treating physician's opinion).

The revised rules instead require the ALJ to consider all opinion evidence and determine the persuasiveness of each medical opinion's findings based on factors outlined in the regulations. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The most important factors considered by an ALJ are "consistency" and "supportability." 20 C.F.R.

§ 404.1520c(b)(2). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." *Id.* § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Lastly, the ALJ can also consider, to a lesser degree, other factors, such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source actually examined the claimant. *See Woods*, 32 F.4th at 792.

Recently, the Ninth Circuit held that the revised rules clearly intended to abrogate its precedent requiring ALJs to provide "specific and legitimate reasons" for rejecting a treating physician's opinion. *Woods*, 32 F.4th at 792. Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* Therefore, an ALJ, "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citation omitted) (alteration in original).

Dr. Schechtman has treated Plaintiff "for joint pain, fatigue, swelling, and fibromyalgia," since May 2018. (Doc. 19 at 4.) She "opined the [Plaintiff] could perform sedentary exertion activities intermittently with restricted postural abilities and occasional to no manipulative and reaching activities." (R. at 20.) Dr. Schechtman completed two check-box assessments, one on February 14, 2020, and the other on February 10, 2021. (Doc. 19 at 8.) In each, she concluded that Plaintiff "could only sit, stand, or walk for one hour at a time, could occasionally perform fine and gross manipulation and reach" for up to 2.5 hours, "could never reach above the head, and could occasionally reach below the

shoulder." (*Id.*) Dr. Schechtman also treated Plaintiff on January 26, 2021, between these two assessments. (R. at 733.) While the January 26, 2021 treatment notes detailed Plaintiff's history of chronic fatigue, fibromyalgia, and other symptoms, it also documented "normal strength, normal sensation, normal range of motion, negative straight leg raise, normal muscle tone, and normal gait." (R. at 18, 735–38.)

The ALJ ultimately found "the opinions of the [Plaintiff's] treating provider, Joy Schechtman, M.D., to be not persuasive."  The ALJ reasoned:

> This check-box form provides little or no explanation for severe limitations. Opinions that the claimant can never climb stairs, can never reach overhead with the right arm, and can only lift ten pounds occasionally may be consistent with the claimant's self-report, but have no support in the objective medical record. The opinions of the DDS consultants and Dr. Bejerano are better supported and more consistent with the record for the reasons discussed above and are therefore more persuative. Accordingly, Dr. Schechtman's opinion is not persuasive.

(R. at 20.)

The ALJ adequately addressed the supportability and consistency factors in rejecting Dr. Schechtman's opinion. As Commissioner points out, Dr. Schechtman's check-box assessments only list "Plaintiff's diagnoses, medications, and treatment plan to explain her extreme limitations," but do "not explain why Plaintiff would be unable to stand, walk, and sit for more than a combined three hours in a day." (Doc. 21 at 12.) With respect to supportability, more weight is generally accorded to medical opinions with explanations that are supported by objective medical evidence in the record. 20 C.F.R. § 404.1527(c)(3). Although a medical opinion generally cannot be rejected solely because it is a check-box form, it can be rejected if opinions are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (recognizing that a check-box form is not entitled the same weight as other credible

evidence in the record if it is otherwise unsupported or unexplained). Here, the ALJ determined that Dr. Schechtman's check-box assessments did not adequately explain any of Plaintiff's alleged severe limitations and were unsupported and inconsistent with the objective medical record.[1]

The ALJ also noted that Dr. Schechtman's opinion "may be consistent with the claimant's self-report[;]" however, it had "no support in the objective medical record" and was comparatively less consistent and less supported than the opinions of the DDS consultants and Dr. Bejerano. (R. at 20.) A plaintiff's self-report alone is insufficient to substantiate a medical opinion, especially when the plaintiff has been deemed not credible and the opinion is inconsistent with the objective medical record.[2] *See Cancanon v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04319-PHX-GMS, 2019 WL 1099088, at *3 (D. Ariz. Mar. 8, 2019) (recognizing that "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion") (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)).

An ALJ may properly reject a medical opinion if it lacks support from record evidence and is instead based only on a claimant's subjective testimony or from testing within their control. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). As discussed below, the ALJ properly rejected Plaintiff's symptom testimony based on its inconsistency with the medical record and Plaintiff's daily activities. In rejecting Dr. Schechtman's opinion, the ALJ did not find any medical evidence corroborating the extent of Dr. Schechtman's findings, other than the Plaintiff's own symptom reports. (R. at 20.) In fact, the ALJ appropriately assigned more weight to the opinions of the DDS consultants and Dr. Bejerano which were consistent with and supported by the objective medical

---

[1] Plaintiff also argues that the February check-box forms are supported by Dr. Schechtman's own medical records detailing multiple visits with Plaintiff. (Doc. 19 at 13.) As discussed below, the Court disagrees. Dr. Schechtman's treatment records are largely inconsistent with her opinions.

[2] As discussed in Part III.B, *infra*, the ALJ properly determined that Plaintiff's symptom testimony was not credible because it was inconsistent with the objective medical evidence and Plaintiff's reported daily activities.

record. *See Tonapetyan*, 242 F.3d at 1149 ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.").

Moreover, Dr. Schechtman's check-box assessments are somewhat inconsistent with her own treatment records. The ALJ considered Dr. Schechtman's records at length, noting that her records "mention various abnormalities" yet also document findings inconsistent with Plaintiff's severe limitations. For example, Dr. Schechtman's check-box assessments claim Plaintiff can only lift ten pounds occasionally; yet the ALJ noted her treatment records document Plaintiff's normal muscle tone and normal range of motion. (R. at 18, 20.) As another example, Dr. Schechtman's opinion indicated that Plaintiff can perform "occasional to no manipulative and reaching activities" (R. at 20); yet, the ALJ found inconsistencies, citing to her January 26, 2021 treatment notes which state that Plaintiff can "dress [herself]," "get in and out of bed," "lift a full cup or glass to [her] mouth," "walk outdoors on flat ground," "bend down and pick up clothing from the floor," "turn faucets on and off," and "get in and out of car" "without any difficulty." (R. at 739–40.) Plaintiff claims Dr. Schechtman's opinion was internally consistent because "Dr. Schechtman observed at every treatment visit that [Plaintiff] had some combination" of symptoms consistent with her diagnosis. (Doc. 22 at 5.) The Court disagrees. The incongruities between Dr. Schechtman's treating records and check-box assessments provide additional evidence supporting the ALJ's conclusion that Dr. Schechtman's opinion was unpersuasive. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding the ALJ's decision rejecting plaintiff's treating physician testimony given the "incongruity" between [the physician's] Questionnaire responses and her medical records").

Accordingly, the ALJ's finding that Dr. Schechtman's opinion was unpersuasive is supported by substantial evidence and free from legal error.

**B.    Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ committed materially harmful error by rejecting

Plaintiff's symptom testimony without "specific, clear and convincing reasons supported by substantial evidence" in the record. (Doc. 19 at 18.) The Commissioner counters, claiming the ALJ reasonably rejected Plaintiff's symptom testimony with clear and convincing reasons. (Doc. 21 at 5.)

In evaluating a claimant's symptom testimony, the ALJ employs a two-step process. *Garrison*, 759 F.3d at 1014. First, the ALJ considers whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant presents such evidence, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The Ninth Circuit has expressly held that a claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282 (internal citation omitted). The clear and convincing standard is the most demanding in Social Security cases. *Garrison*, 759 F.3d at 1015. An ALJ's "vague allegation" that a claimant's symptom testimony is inconsistent with the medical record does not meet the clear and convincing standard. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014). Similarly, an ALJ cannot satisfy the clear and convincing standard based solely upon "a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, Plaintiff testified that her impairments "cause inflammation and swelling in her hands and feet" which limits "her ability to lift and stand, walk, and sit for extended periods." (R. at 17–18.) According to Plaintiff, her pain and fatigue levels varied each day, but "at least a couple times a week" she would need to lie down and rest. (R. at 56.) In evaluating this testimony, the ALJ determined that step one was satisfied as "the claimant's

medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (R. at 18.) Nonetheless, the ALJ rejected Plaintiff's symptom testimony, offering three reasons. First, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 18.) Second, the ALJ determined that Plaintiff's course of treatment "has been essentially routine and conservative in nature." (R. at 19.) Lastly, the ALJ reasoned Plaintiff's daily activities were inconsistent and "not limited to the extent one would expect, given [her] complaints of disabling symptoms and limitations." (*Id.*)

### 1. Inconsistency with Objective Medical Record

The ALJ's first stated reason for discounting Plaintiff's testimony was because the testimony was "not entirely consistent with the medical evidence." (R. at 18.) The ALJ found that Plaintiff has 18/18 tender points and muscle tension consistent with her fibromyalgia and chronic fatigue. (*Id.*) However, while Plaintiff "complained of achy wrists and swelling," the ALJ noted that a "bilateral wrist imaging [from July 2019] showed no acute osseous abnormality." (*Id.*) An imaging report from July 2020 "noted arthritic changes suggestive of inflammatory arthritis component," yet, the ALJ found that "[i]n January 2021, the claimant had a normal joint exam of her wrists." (*Id.*) The ALJ also evaluated physical examination reports detailing various abnormalities such as "joint crepitus, shoulder weakness, abnormal wrist motion . . ." amongst other symptoms consistent with Plaintiff's impairments. (*Id.*) The ALJ determined that the reports, however, also document normal strength, gait, range of motion, reflexes, and motor task ability from different medical examiners. (*Id.*) In all, the ALJ considered multiple medical examination reports from at least five sources in determining that Plaintiff's symptom testimony was inconsistent with the objective medical record.

Plaintiff asserts that the ALJ failed to sufficiently explain which of her symptoms where consistent or inconsistent with the evidence and how the ALJ's conclusions were supported. (Doc. 19 at 19.) The Court finds, however, that the ALJ provided a detailed

review of Plaintiff's symptom testimony and identified specific examples of medical evidence that did not support the alleged severity of Plaintiff's limitations. During her symptom testimony, Plaintiff stressed her severe inflammation and swelling in her hands and feet, her limited physical abilities for extended periods, her need to take regular breaks, as well as her treatment plan and pool exercise. (R. at 18.) In turn, the ALJ determined from the record evidence that Plaintiff exhibited normal strength, normal range of motion, no discomfort sitting during an evaluation, and no difficulty with physical abilities like attending to personal care. (*Id.*) This substantial evidence in the record supports the ALJ's decision to reject Plaintiff's symptom testimony. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record," courts "may not engage in second-guessing.").[3] For these reasons, the ALJ properly relied on the objective medical record in rejecting Plaintiff's symptom testimony.

### 2.     **Plaintiff's Daily Activities**

While a claimant is not required to be completely incapacitated to be found disabled, an ALJ may consider the Plaintiff's daily activities to determine whether they are "inconsistent with the alleged symptoms." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (permitting consideration of a claimant's daily activities when weighing symptoms). A district court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

Here, the ALJ emphasizes Plaintiff's self-reporting that "she was providing '24/7' care for her mother . . . [and] going to the gym three days a week and [wanting] to increase it." (R. at 19.) While Plaintiff stated her "limitations make it difficult to complete household chores," Plaintiff also indicated that she exercised in a pool and had "no difficulty with

---

[3] Plaintiff contends that the ALJ emphasized other evidence in the record which supports Plaintiff's symptom testimony; however, this is inapposite. The ALJ concluded the objective medical record, including Plaintiff's statements to her providers, is inconsistent with Plaintiff's testimony regarding the severity of her limitations. The Court declines Plaintiff's request to second-guess the ALJ's reasonable interpretation of the evidence, even if such interpretation could give rise to inferences more favorable to Plaintiff. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

physical abilities like attending to her personal care and walking on flat ground." (R. at 18.) The ALJ also found that Plaintiff was working as a companion during her alleged disability period. (R. at 19, 604.) Where the "record reflects that the claimant has normal activities of daily living including cooking [and] house cleaning . . . [this] suggest[s] that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Because the record states that Plaintiff was both working as a companion and giving 24/7 care to her mother during the disability period, the ALJ's decision is supported by a rational interpretation of the record.

A claimant's daily activities serve as proper context to an ALJ's credibility determinations, and the ALJ did not err in considering them here. *Burch*, 400 F.3d at 681 (recognizing that an ALJ is "permitted to consider daily living activities" in assessing the credibility of a claimant's testimony, especially "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace"). Therefore, the Court finds the ALJ properly relied on "specific, clear and convincing reasons" supported by substantial evidence in rejecting Plaintiff's symptom testimony. *Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281).

### 3. Conservative Treatment

As to her treatment, Plaintiff was first prescribed cyclobenzaprine and diclofenac for her fibromyalgia and hand pain at the time she was working as a companion. (R. at 18; Doc. 21 at 6.) Plaintiff also started treatment with Plaquenil in October 2019. (R. at 18.) The record reflects that Plaintiff's symptoms were managed as her self-reported levels of pain were reduced from 9/10 or 11/10 pain to 7/10 or 6/10. (*See* R. at 319, 419, 530, 562, 664, 724.) In October of 2020, Plaintiff was prescribed methotrexate "with the goal of being more aggressive" as compared to her current regimen. (R. at 722–23.) By January 2021, Plaintiff denied experiencing adverse effects to methotrexate but "was slightly frustrated as she had not had much benefit since starting it." (R. at 19.) During Plaintiff's most recent treatment in January 2021, her treating physician did not recommend changing

any doses. (R. at 742; Doc. 21 at 6.) The ALJ ultimately found that Plaintiff's "symptoms have been managed with medication" and her "treatment has been essentially routine and conservative in nature with medication." (R. at 18–19.)

An ALJ may reject a plaintiff's symptom testimony when the treatment is conservative in nature and inconsistent with the extent of the plaintiff's symptom complaints. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The extent of a claimant's treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). However, if the claimant "has a good reason for not seeking more aggressive treatment," a conservative course of treatment is not a proper justification for rejecting a plaintiff's testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

While the Plaintiff's treatment was relatively conservative and routine for most of the disability period, the October 2020 change to methotrexate is a "more aggressive" form of treatment that weighs against the ALJ's conclusion. The ALJ failed to note which more aggressive treatment options were available to Plaintiff that she failed to pursue. Moreover, the record shows that the methotrexate was not alleviating Plaintiff's pain, suggesting that her pain is not managed with medication as the ALJ determined. (R. at 19.) Fibromyalgia has no cure, and its cause is unknown, making it "poorly understood within much of the medical community." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). In *Cindy F. v. Berryhill*, the Ninth Circuit disagreed with the ALJ's "characterization of Plaintiff's fibromyalgia care as 'conservative'" because it was not supported by substantial evidence. 367 F. Supp.3d 1195, 1220 (9th Cir. 2019). As is the case here, if "the ALJ [does] not specify what 'more aggressive treatment options [are] appropriate or available' it [is] illogical to discredit Plaintiff 'for failing to pursue non-conservative treatment options where none exist." *Id.* (quoting *Lapeirre-Gutt v. Astrue*, 381 Fed. App'x 662, 664 (9th Cir. 2010). Without more, the ALJ's finding that Plaintiff's treatment is "essentially routine and conservative in nature" is not supported by substantial evidence. (R. at 19.)

Nonetheless, "[e]ven when the ALJ commits legal error, [the Court will] uphold the

decision where that error is harmless." *Treichler*, 775 F.3d at 1099. "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (internal citations and quotations omitted). The Court has found at least two clear and convincing reasons supported by substantial evidence for the ALJ's decision to reject Plaintiff's symptom testimony—that Plaintiff's testimony was inconsistent with both the objective medical record and Plaintiff's daily activities. While the ALJ erred in relying on conservative treatment, this error is harmless because it is "inconsequential to the ultimate nondisability determination" and would not change the validity of the ALJ's decision to reject Plaintiff's testimony. *Treichler*, 775 F.3d at 1099; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ's reliance on an invalid reason to discount claimant's allegations was "harmless error" where the ALJ has also relied on other valid reasons).[4]

## IV. Conclusion

Accordingly,

**IT IS ORDERED** affirming the April 7, 2021 decision by the Administrative Law Judge (R. at 14), as upheld by the Appeals Council on October 25, 2021. (R. at 1.)

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment consistent with this Order and close this case.

Dated this 12th day of January, 2023.

Michael T. Liburdi
United States District Judge

---

[4] Plaintiff also asks this Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Doc. 19 at 25.) Because the Court has affirmed the ALJ's decision, the Court need not address the parties' remand arguments.